IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF GAGE T.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF GAGE T., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

LISA T., APPELLANT, AND SPENCER L., APPELLEE.

Filed January 24, 2023.    No. A-22-456.

Appeal from the Separate Juvenile Court of Sarpy County: JONATHON D. CROSBY, Judge. Affirmed.

Melissa M. Oestmann, of Oestmann & Albertsen Law, P.C., L.L.O., for appellant.

Andrew T. Erickson, Deputy Sarpy County Attorney, and Lauren S. Evans, Senior Certified Law Clerk, for appellee.

PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Lisa T. appeals the order of the separate juvenile court of Sarpy County which terminated her parental rights to her minor child. Upon our de novo review of the record, we find clear and convincing evidence establishing the statutory grounds for termination and that terminating Lisa's parental rights was in the best interest of her child. We affirm the order of the juvenile court.

## BACKGROUND

Lisa is the mother of Gage T, born in February 2016. Spencer L. is Gage's father; although his parental rights were also terminated, he has not appealed and will be discussed only as necessary. In September 2019, a juvenile petition was filed alleging in part that Gage came under

the provisions of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) in that he lacked proper parental care by reason of the fault or habits of Lisa, specifically that on or about September 8, Gage was removed by law enforcement after being found in an unsafe and unsanitary motel room with drugs and drug paraphernalia in his reach.

The petition alleged Lisa had left Gage in the care of Spencer, despite knowing he was abusing drugs and that in January 2019, the Department of Health and Human Services (DHHS) had warned Lisa that she should not leave Gage in Spencer's care due to Spencer's drug use. In September, Gage entered foster care. Gage was adjudicated in February 2020. In July, Gage was placed in the home of Michael T., who is the father to Gage's half-brother.

In February 2021, the State filed a supplemental petition, alleging that since the inception of the case and Gage's removal, Lisa had been involved in criminal activity that had been a barrier to reunification efforts and services offered by DHHS, that there were five criminal matters that were awaiting outcomes in three different counties, including misdemeanor theft by shoplifting and failure to appear, multiple charges of felony possession of a controlled substance, misdemeanor driving under suspension, and felony tamper with physical evidence. The dates of the charges ranged from February 2020 to September 2020. In May 2021, Lisa and the State entered into a global plea agreement by which Lisa would dismiss an appeal she had filed in the juvenile case, and the State would dismiss the supplemental petition in that case, refrain from filing another supplemental petition as it related to Lisa's most recent arrest in Douglas County, and the State would support guardianship of Gage by Michael and not refile the supplemental petition as long as the guardianship was accomplished.

In December 2021, the State filed a motion to terminate Lisa's parental rights. The motion alleged that Lisa had substantially and continuously or repeatedly neglected and refused to give Gage necessary parental care and protection as set forth in Neb. Rev. Stat. § 43-292(2) (Reissue 2016) and Gage had been in out-of-home placement for 15 or more months of the most recent 22 months as set forth in § 43-292(7). The motion alleged that Gage had been under the jurisdiction of the juvenile court since September 2019, that Lisa had not complied with court orders, nor had she made sufficient progress to have unsupervised parenting time, and that despite numerous services she remained unfit to care for Gage. The termination hearing began in March 2022 and was continued to May 2022. Lisa did not appear. At the time of the termination hearing, Gage had been in the foster care system for 31 months.

At the termination hearing, the caseworker assigned to the family between September 2019 and January 2020 testified that as of November 2019, Lisa had attended all scheduled visits, and they classified that as minimal participation. There were concerns during the visits about Lisa not being present and leaving the room for lengths of time. During this time, voluntary drug testing was being offered to Lisa, but she was not utilizing it.

The second caseworker was assigned to the family from January 2020 to August 2020. During this time period, Lisa started a psychological evaluation but did not complete it. She signed a release for her records, but then rescinded it. The caseworker reported Lisa's progress was very poor, and she was not confirming the visits as required by the visitation company. Early on, Gage was at Lisa's home for a visit when law enforcement arrived to serve a warrant; Lisa ran from the visit, leaving Gage with the visitation worker. Visitation reports from that time reflect that visits were very inconsistent, and that Lisa's behaviors were erratic.

During the second caseworker's time, Lisa rarely participated in the court-ordered drug testing. She was ordered to participate in NA and AA but was not participating. Between March 2020 and June 2020, Lisa was involved in criminal matters in Sarpy County and Nemaha County for possession of a controlled substance. Lisa did not have gainful employment during this time. Visits were temporarily suspended from the end of March to the end of May or beginning of June.

The third caseworker assigned to the family worked with them from July or August 2020 to July 2021. Her November 2020 court report reflects that Lisa had not been engaged with all services to address concerns in her home, and that she had not participated in family support because she did not feel she had any issues she needed to work through. An evaluation Lisa received in May 2020 was included in this report and reflected that Lisa adamantly denied substance use and stated that she is occasionally associated with others who use illegal substances and that is how she was charged with possession of a controlled substance. When the evaluator asked Lisa about social media photographs showing her with a pipe and other drug paraphernalia, Lisa stated that the photographs were not real, and she was involved in a civil lawsuit against the person who made them.

A July 2021 case update reflected that in the prior 7 months, Lisa had been discharged from three separate visitation companies due to nonengagement. Lisa did not attend any visits with Gage in April and May, though she did attend supervised visits in June and July. At that time, the caseworker recommended Lisa's visits continue to be supervised, as she had not made progress in her case plan goals to move to unsupervised. The report reflects that Lisa was not addressing mental health concerns, reporting in February and March that she did not need those services.

At some point during the third caseworker's time with the family, Lisa was incarcerated. She told the caseworker that she got caught with something in her car that was not hers. Lisa provided the caseworker with AA cards, but they were unable to be verified because her adult son signed some of them. Lisa reported that she owned a landscaping company, but the caseworker never received verification of employment. She also failed to provide timely contact information to the caseworker.

In June 2021, the State filed an ex parte motion for an emergency placement change for Gage. The basis for the placement change was that Michael was allowing Lisa unsupervised contact with Gage despite having acknowledged it was unsafe for Gage to do so. After an initial evidentiary hearing, the court ordered the child be returned to Michael pending a further hearing scheduled in July. The State eventually dismissed its motion.

The final caseworker started working with the family in July 2021. Despite monthly attempts by the caseworker, her contact with Lisa was minimal, with only one in-person visit. Lisa was unsuccessfully discharged from a visitation agency in June for lack of engagement and verbal aggression toward the visitation specialist. In October, Lisa indicated to the caseworker that she was in California and had completed inpatient treatment, but failed to provide any information that would allow the caseworker to verify this information. Lisa did not provide any information to the caseworker about employment, and never told her that she was self-employed.

A November 15, 2021, report from the caseworker reflects that Lisa requested a visit with Gage; the caseworker informed Lisa that she must be residing in the Omaha area and meet in-person before a parenting time referral would be submitted. On November 24, law enforcement received a tip that Lisa was at Michael's house and went there to execute an arrest warrant for

Lisa. Lisa and Gage were found in the basement of the residence hiding behind a cabinet with a false wall. Lisa was subsequently arrested.

A January 5, 2022, court report from the caseworker indicated that Lisa had been incarcerated since November 24, 2021. Lisa was referred for drug testing on January 30, 2022, but she only completed one of eight tests before being unsuccessfully discharged on March 21. At the termination hearing, the current caseworker recommended a permanency plan of adoption, as Gage had been in out-of-home placement for 31 months and Lisa had made very minimal progress in addressing the reasons why Gage was brought into care.

The caseworker had concerns about continued future harm to Gage if reunification occurred due to the lack of addressing substance use, stable housing, and employment. She recommended a termination of parental rights. In the caseworker's opinion, it would be in the best interests for Gage to be adopted. At the time of the hearing, the caseworker did not know where Lisa was, and Lisa had an active warrant out of Sarpy County and two active warrants from Nemaha County.

A week prior to the termination hearing, Lisa made an appointment with Gage's therapist; the therapist thought the appointment was with Gage's foster mother and did not realize the appointment was with Lisa until just before the appointment. Lisa arrived late and told the therapist many things that were inconsistent with what the therapist had heard from other people. Lisa implied that she did not have a drug problem, that the times she had been arrested for drug paraphernalia it belonged to someone else, and that she did not hold herself accountable for the arrest warrants. At the termination hearing, Gage's therapist did not believe the time was right for Gage to have therapeutic contact with Lisa based on being told that Lisa was not doing many of the things the court had ordered, that she had arrest warrants, and that she did not appear very stable at that time.

The juvenile court entered a written order finding the statutory grounds based upon § 43-292(2) and (7) had been proved by clear and convincing evidence, that Lisa was an unfit parent, and that it was in Gage's best interests to terminate Lisa's parental rights. Lisa appeals.

ASSIGNMENTS OF ERROR

Lisa assigns, summarized and restated, that the juvenile court erred in finding clear and convincing evidence of the statutory bases for termination and that termination was in Gage's best interests; therefore, terminating her parental rights was a violation of her constitutional rights. She also argues the juvenile court erred in allowing testimony from witnesses who were not timely disclosed.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of facts over the other. *Id*.

ANALYSIS

*Statutory Grounds.*

In Nebraska, the grounds for terminating parental rights are codified in § 43-292. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). That statute contains 11 separate subsections, any one of which can serve as a basis for termination when coupled with evidence that termination is in the best interests of the child. *Id*. It is the State's burden to show by clear and convincing evidence both that one of the statutory bases enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Mateo L. et al., supra*. Here, the State sought termination of Lisa's parental rights under § 43-292(2) and (7). The juvenile court found the State met its burden with respect to both of those statutory bases.

Section 43-292(7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. This subsection operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault of the parent. *In re Interest of Mateo L. et al., supra*. In other words, if the 15-out-of-22 formula is met, § 43-292(7) is met. *In re Interest of Mateo L. et al., supra*.

In this case, the evidence showed that Gage had been removed from Lisa's care in September 2019. At the time the termination petition was filed in December 2021, Gage had been in an out-of-home placement for 27 months. At the time of the termination hearing in April 2022, that length was extended to 31 months. The State presented sufficient evidence to satisfy § 43-292(7). While Lisa also argues the State failed to show clear and convincing evidence of § 43-292(2), because we find sufficient evidence for termination under § 43-292(7), we need not consider the sufficiency of the evidence concerning the State's other statutory bases for termination. See *In re Interest of Mateo L. et al., supra* (where one statutory basis has been established, appellate court need not consider sufficiency of evidence concerning State's other statutory bases for termination).

*Unfitness and Best Interests.*

Lisa also argues the juvenile court erred in finding she was unfit and that terminating her parental rights was in Gage's best interests. Under § 43-292, it is the State's burden by clear and convincing evidence to show that there not only exists a statutory basis for termination but that termination is in the best interests of the child. *In re Interest of Mateo L. et al., supra*. Whereas statutory grounds are based on a parent's past conduct, the best interest inquiry focuses on the future well-being of the child. *Id.* This second hurdle is a high one for the State, since a parent's right to raise his or her children is constitutionally protected. *Id*.

The Due Process Clause of the U.S. Constitution would be offended if a state were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). As such, we apply a rebuttable presumption that it is in the child's best interests to maintain a relationship with his or her parent. *Id*. That presumption can only be overcome by a showing that the parent is either unfit to perform the duties imposed by the relationship or has forfeited that right. *Id*.

Although the term "unfitness" is not expressly stated in § 43-292, it derives from the fault and neglect subsections of that statute and from an assessment of the child's best interests. *In re Interest of Mateo L. et al., supra*. In this context, parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests and parental unfitness analyses require separate, fact-intensive inquiries, but each examines essentially the same underlying facts. *Id*.

Here, Gage was removed from Lisa's care in September 2019, after being found in a hotel room with drug paraphernalia. From September 2019 to January 2020, Lisa's participation in the case was minimal. While she participated in visits, she was leaving the room for long periods of time and would not utilize the voluntary drug testing she was offered. At one point, law enforcement came to Lisa's home during a visit with Gage to serve a warrant, and Lisa fled, leaving Gage with the visitation worker. Reports reflect that during this time period, Lisa's behaviors were erratic, and she rarely participated in court-ordered drug testing. Between March and June, Lisa was involved in criminal matters in two counties involving possession of controlled substance charges. Despite this, in a May evaluation, Lisa reported that she did not use substances, and that she was charged because of her association with others who use illegal substances. When asked about photographs of her with drug paraphernalia, Lisa claimed the photographs were not real and she was involved in a lawsuit about the issue.

In 2021, Lisa was discharged from three visitation companies because of nonengagement and did not attend any visits with Gage in April or May. In June, the State attempted to temporarily remove Gage from his placement because of an allegation that Lisa was having unsupervised visits with him. In July, the caseworker was still recommending supervised visits because Lisa had not made progress in her case plan goals.

In October 2021, Lisa claimed to have gone to inpatient treatment but did not sign a release to allow this to be verified. She was told by the caseworker at that time that to start visitation with Gage again, she would need to be in the Omaha area and meet in-person with the caseworker. Instead of doing so, Lisa had unsupervised contact with Gage in November. When law enforcement came to serve a warrant during that unsupervised contact, Lisa hid with Gage in an area behind a false wall. Lisa was incarcerated from November to January 2022. At the time of the termination hearing, which she did not attend, Lisa had active warrants in two counties.

Lisa never provided proof of employment. It was unknown at the termination hearing where Lisa was living. However, a week prior to the hearing, Lisa met with Gage's therapist and implied that she did not have a drug problem, that every time she had been arrested for drug paraphernalia it belonged to someone else, and that she did not hold herself accountable for the arrest warrants. Gage's therapist did not recommend even therapeutic contact for Gage and Lisa at that time based on being told Lisa was not doing many of the things the court had ordered, having arrest warrants, and not appearing very stable. The current caseworker had concerns about future harm to Gage due to the lack of addressing substance use, stable housing, and employment.

When a parent is unable or unwilling to rehabilitate himself or herself within a reasonable period of time, the child's best interests require termination of parental rights. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). The 15-month condition contained in § 43-292(7) provides a reasonable timetable for parents to rehabilitate themselves. *In re Interest*

*of Leyton C. & Landyn C., supra*. Gage was removed after it was alleged that Lisa left Gage with Spencer after being warned Spencer was not an appropriate caregiver, and Gage was found in a hotel room with drug paraphernalia. Approximately 2½ years after Gage's removal, Lisa has not shown significant improvement in recognizing the harm, or risk of harm, her choices cause to Gage.

Lisa claimed she did not use controlled substances, but would not participate in drug testing, and had multiple charges in multiple counties for possession of controlled substances. While claiming that she had attended inpatient treatment, Lisa would not allow the caseworker to verify this. Despite being told she could not have unsupervised visitation with Gage, she had such visitation, and when the police came to arrest her on a warrant during that unsupervised visitation, she hid with Gage behind a false wall. She failed to provide proof of employment. Her contact with caseworkers, particularly in the months before the termination hearing, was minimal. It was unknown where she was living at the time of the termination hearing. She had active warrants at the time of the termination hearing, and she did not attend the hearing.

Lisa has not placed herself in a better position to safely parent Gage than when he was removed, nor has she made significant progress in remedying the issues that led to his removal. She has continued to place her own needs and desires ahead of Gage's well-being, and it does not appear that will change in the near future. Gage, 6 years old at the time of termination, had been out of Lisa's custody for 31 months, or nearly half his life. He should not be made to wait longer for permanency. We therefore affirm the juvenile court's decision that Lisa is unfit and that the best interests of Gage require termination of Lisa's parental rights.

Because we find the evidence sufficient to support the juvenile court's conclusion that a statutory basis existed, that Lisa was unfit, and that termination was in Gage's bests interests, we find no merit to Lisa's argument that her constitutional rights were violated by termination that was unsupported by sufficient evidence.

*Witness Testimony.*

Lisa argues the juvenile court erred in allowing the State to present witnesses that were not disclosed until just prior to, or during, the termination hearing. We disagree.

By way of background, the State filed a supplemental notice of trial witnesses on March 25, 2022, but failed to serve the parties or their counsel. On the first day of the termination hearing, March 30, the State attempted to call one of the witnesses that was on the supplemental notice and Lisa's counsel objected. The court sustained the objection, precluding the witness from testifying that day, but not precluding the additional witnesses from testifying on one of the later dates for which the hearing was scheduled.

Lisa filed a written motion to exclude the witnesses the evening of March 30, 2022, requesting that the witnesses' testimony be excluded, or in the alternative, that she be granted a continuance to conduct discovery pertaining to the witnesses. On March 31, the State filed another notice of supplemental witnesses that included those in the March 25 motion, as well as an additional witness. Prior to the termination hearing resuming on March 31, the court took up the motion to exclude, or in the alternative, to continue. The State also noted that the parties had discussed continuing the third day of the hearing due to the unavailability of the present caseworker. Based on the unavailability of the caseworker, and the motion to exclude witnesses or

grant additional time, the juvenile court did not resume the hearing that day and continued it until May 6.

On April 6, 2022, Lisa filed an objection to the supplemental notice of witnesses, requesting that the new witness listed in the March 31 motion be excluded. Following a hearing, the court denied the motion, noting that the hearing would not resume for a few more weeks and that the additional witness was foundational, at most.

Lisa now assigns that the court erred in allowing any of the additional witnesses to testify. She asserts that her due process rights were violated by the untimely disclosure.

We note that the Nebraska Evidence Rules do not apply in cases involving the termination of parental rights. *In re Interest Gabriel B.*, 31 Neb. App. 21, 976 N.W.2d 206 (2022). Instead, due process controls and requires that the State use fundamentally fair procedures before a court terminates parental rights. *Id*. The concept of due process embodies the notion of fundamental fairness and defies precise definition. *Id*. In deciding due process requirements in a particular case, we must weigh the interest of the parent, the interest of the State, and the risk of erroneous decision given the procedures used. *Id*. Due process is flexible and calls for such procedural protections as the particular situation demands. *Id*.

In Lisa's first written motion, she sought either exclusion of the witnesses' testimony or a continuance. The court granted a continuance from March 31, 2022 to May 6. Lisa does not argue that the amount of time was insufficient; rather, she argues that "[t]here is no basis in law . . . for continuing an already multi-day trial to allow the State to 'fix' its witness issues." Brief for appellant at 31. But Lisa received exactly the relief she sought; therefore, we find no error in the juvenile court's decision to grant a continuance to provide Lisa time to conduct discovery as to these witnesses.

As to the remaining witness the State added in its March 31, 2022 motion, the State did not ultimately call her to testify. Therefore, there can be no error in the court's order denying Lisa's motion to exclude her testimony.

## CONCLUSION

Upon our de novo review of the record, we find no error in the decision of the juvenile court. We also find Lisa's due process rights were not violated. Accordingly, we affirm the juvenile court's order terminating Lisa's parental rights.

AFFIRMED.